UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY EALY, | No. 2:18-cv-1084 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, subjective testimony, and step five conclusion were erroneous.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 8.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for the payment of benefits.

**PROCEDURAL BACKGROUND**

In March of 2015, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on January 27, 2015. (Transcript ("Tr.") at 20, 216-19.) Plaintiff's alleged impairments included encephalitis, anxiety, memory impairment, seizure disorder, and traumatic brain injury. (Id. at 233.) Plaintiff's application was denied initially, (id. at 146-50), and upon reconsideration. (Id. at 153-57.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on May 16, 2017. (Id. at 37-63.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 37-39.) In a decision issued on July 28, 2017, the ALJ found that plaintiff was not disabled. (Id. at 31.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of January 27, 2015 through his date last insured of June 30, 2016 (20 CFR 404.1571 *et seq*.). (Exhibits B3D; B4D)
>
> 3. Through the date last insured, the claimant had the following severe impairments: seizure disorder; history of herpes encephalitis and associated traumatic brain injury; degenerative disc disease of the cervical and thoracic spine; gout; depressive disorder; anxiety disorder; history of attention deficit hyperactivity disorder (ADHD). (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: The claimant can

occasionally lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for six hours of an 8-hour workday and sit for six hours of an 8-hour workday, with normal breaks. He cannot climb ladders, ropes, and scaffolds. The claimant should avoid concentrated exposure to hazards. The claimant can perform simple, routine tasks. He can tolerate limited interaction with others and limited public contact.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1968 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated (sic) last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 27, 2015, the alleged onset date, through June 30, 2016, the date last insured (20 CFR 404.1520(g)).

(Id. at 22-31.)

On February 26, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's July 28, 2017 decision. (Id. at 2-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 1, 2018. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

////

support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

////

////

4

**APPLICATION**

Plaintiff's pending motion argues that the ALJ committed the following three principal errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ's treatment of the subjective testimony constituted error; and (3) the ALJ's step-five finding is not supported by substantial evidence.[3]  (Pl.'s MSJ (ECF No. 12) at 9-17.[4])

**I.    Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]"  Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  Chaudhry v. Astrue, 688 F.3d 661,
////

---

[3]  The court has reordered, and reorganized, plaintiff's claims for purposes of clarity and efficiency.

[4]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A. Dr. Chris Van Schenck

Here, plaintiff challenges that the ALJ's treatment of the opinions offered by Dr. Chris Van Schenck, a treating psychiatrist.[5] (Pl.'s MSJ (ECF No. 12) at 9-12.) With respect to Dr. Schenck, the ALJ acknowledged that in October of 2015, Dr. Schenck opined that plaintiff "had generally poor ability to relate to others, maintain concentration, and perform simple tasks." (Tr. at 28.) And that in December of 2015, Dr. Schenk opined that, although plaintiff's mood had improved, plaintiff had "impairment in his memory and concentration," and Dr. Schenk did not expect plaintiff's condition to improve. (Id.)

The ALJ afforded Dr. Schenck's opinions "little weight," stating:

> His opinion is conclusory, as it is not supported by treatment notes regarding the claimant's mental health conditions. His assessment of the claimant's mental functioning is starkly inconsistent with the medical evidence of record as a whole, including progress notes that documented stable psychiatric presentation, improved symptomology with medication, and the claimant's generally unremarkable presentation upon mental status examination with Dr. Dixit.

(Id.) The ALJ offered no further explanation. And the ALJ's assertions are unsupported by citation to evidence of record.

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary

---

[5] The opinions of a medical specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.").

6

support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

And when an ALJ elects to afford the opinion of a treating physician less than controlling weight, the opinion must be "weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ's failure to discuss these factors "alone constitutes reversible legal error." (Id. at 676.)

Here, Dr. Schenck had been treating since May 5, 2015, and saw plaintiff for treatment regularly. (Tr. at 532.) Moreover, the record establishes that Dr. Schenck's opinions were not conclusory, unsupported, or inconsistent with the medical evidence of record, or with Dr. Dixit's findings on examination. In this regard, on April 13, 2015, Dr. Schenck opined that plaintiff's memory was poor due to a traumatic brain injury, that plaintiff experienced impaired concentration with "Long/short term memory problems," and was tearful. (Id. at 522.)

On October 29, 2015, Dr. Schenck opined that plaintiff's traumatic brain injury, major depression, and impaired memory and concentration resulted in "significant disability" with a "poor" prognosis. (Id. at 532.) Dr. Schenck explained that this assessment was supported by plaintiff's difficulties with "limited memory, concentration, following commands, abstract thinking, & dealing with emotional stress." (Id. at 533.) On December 22, 2015, Dr. Schenck wrote a letter stating that plaintiff "has trouble with working memory and concentration as well as emotional struggles." (Id. at 536.)

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness . . . [W]hen mental illness is the basis of a disability claim, clinical and

////

7

laboratory data may consist of the diagnoses and observations of
professionals trained in the field of psychopathology.

Averbach v. Astrue, 731 F.Supp.2d 977, 986 (C.D. Cal. 2010) (quoting Sanchez v. Apfel, 85 F.Supp.2d 986, 992 (C.D. Cal. 2000)).

Nonetheless, Dr. Schenck's opinions are supported by Dr. Schenck's treatment notes. Those treatment notes reflect that Dr. Schenck regularly saw plaintiff for treatment that included medication management and psychotherapy. (Tr. at 458-84, 725-32.) During the course of treatment Dr. Schenck's objective findings reflect that plaintiff exhibited constricted affect, memory and concentration impairment, depressed and anxious mood, "[n]ot oriented to timeperson place," "memory and concentration deficit," "concentration deficit; memory and concentration impairment," and irritable mood. (Id. at 459, 463, 467, 470, 479.)

**B. Dr. Aparana Dixit**

Finally, although Dr. Aparna Dixit's examining opinion differed in many respects from Dr. Schenck's, Dr. Dixit's findings reflect that plaintiff's presentation was not "unremarkable," as asserted by the ALJ. (Id. at 28.) In this regard, Dr. Dixit found, that plaintiff displayed "mildly decreased attention and concentration during the evaluation, especially on tasks that required mental math computation." (Id. at 529.) That plaintiff "had some difficulty solving simple math problems within a time limit." (Id.) Plaintiff was "unable to name the capital of California or the current Governor of California." (Id.) Plaintiff "was able to do serial 3s but not 7s correctly." (Id.)

Dr. Dixit's testing found that plaintiff's "Working Memory Index . . . fell within the low average range" and that plaintiff's "scores suggested mild to moderate impairment in the domain of sequencing, organizing, and mental flexibility." (Id. at 530.) Plaintiff also demonstrated "difficulty with shifting cognitive sets." (Id.) In assessing plaintiff's psychological and cognitive functioning, Dr. Dixit stated:

> During this evaluation, the claimant was noted to have emotional problems in the form of depression. Some cognitive deficits in the domains of mental flexibility and attention modulation were evident. The claimant will benefit from counseling and continued psychiatric

|   |   |
|---|---|
| 1 | treatment for his depression. He will benefit from a medical evaluation for his reported medical issues. |
| 2 | |

(Id. at 530.) Although Dr. Dixit's opinion differed from Dr. Schenck's with respect to plaintiff's degree of impairment, Dr. Dixit nonetheless opined that plaintiff's ability to follow complex instructions, maintain adequate pace or persistence to perform complex tasks, and ability to interact appropriately with the public was moderately impaired. (Id. at 531.) Dr. Dixit also found that plaintiff's ability to maintain attention/concentration and withstand the stress of a work day was mildly to moderately impaired. (Id.)

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Schenck's opinions.

## II. Subjective Testimony

### A. Plaintiff's Subjective Testimony

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 12) at 12-14.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At

the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[6] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ summarized plaintiff's testimony before finding that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision." (Tr. at 26.)

The ALJ then went to discuss plaintiff's seizures, gout, and degenerative disc disease. Thereafter, the ALJ noted that plaintiff's wife reported that plaintiff's seizures "were well controlled," and that the record did not contain evidence of on-going treatment for gout or degenerative disc disease. (Id. at 26-27.) These are clear and convincing reasons for rejecting

---

[6] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

10

plaintiff's testimony with respect to these impairments. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)("unexplained, or inadequately explained, failure to seek treatment" may be a relevant factor in assessing credibility); Gontes v. Astrue, 913 F.Supp.2d 913, 921 (C.D. Cal. 2012) ("Because Plaintiff's testimony conflicted with the evidence that her medical conditions only minimally affected her ability to work and that her pain, diabetes, and asthma were well-controlled with medication and other treatments, the ALJ properly discounted it.").

With respect to plaintiff's mental impairments, however, the ALJ's decision simply recounts various items of evidence. Although the evidence could possibly be characterized as conflicting, the ALJ provides no explanation or elaboration. For example, the ALJ notes that "progress notes . . . document the claimant's ongoing complaints of depression, anxiety, and memory loss," and "use of Zoloft, Xanax, and Adderall since 2014." (Id. at 28.) The ALJ then notes that in June 2015, a neurologist "noted that the claimant reported improvement in his motivation and activity level with Adderall 5 mg per day." (Id.)

To the extent the ALJ intended this single notation to serve as a clear and convincing reason for rejecting plaintiff's testimony concerning mental impairments,

> . . . it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ then went on to discuss the findings and opinions of Dr. Dixit and Dr. Schenck. (Id. at 27-28.) The ALJ, however, does not attempt to explain how those opinions undermine—let alone serve as a clear and convincing reason for rejecting—plaintiff's testimony. Nor is it clear from a reading of those opinions as discussed above.

Moreover, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir.

11

2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Lingenfelter, 504 F.3d at 1036 ("the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Accordingly, the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony concerning plaintiff's mental impairments. Plaintiff, therefore, is also entitled to summary judgment as to this claim.

### B. Lay Witness Testimony

Plaintiff next challenges the ALJ's treatment of the lay testimony offered by plaintiff's wife and stepdaughter. (Pl.'s MSJ (ECF No. 12) at 14-15.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect his activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)). However, the ALJ may cite the same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

Here, the ALJ acknowledged the lay witness testimony "indicating that the claimant was unable to work due to his physical and mental limitations" but gave the statements "little weight . . . for the same reasons" the ALJ rejected plaintiff's testimony. (Tr. at 29.) The ALJ, however, erroneously rejected plaintiff's testimony concerning plaintiff's mental limitations. The rejection of plaintiff's testimony concerning mental limitations, therefore, cannot serve as a germane reason to reject the lay witness testimony concerning plaintiff's mental limitations. See generally Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) ("Because the ALJ did not make a legally sufficient adverse credibility finding with regard to Robbins's own testimony, we cannot say with respect to Rodney's testimony that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

In evaluating the lay witness testimony, the ALJ also made a vague, conclusory, and cursory reference to plaintiff's "activities of daily living." (Tr. at 29.) Not only is this reference unsupported by explanation, or even a citation to the record, but

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). In this regard, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

Accordingly, the ALJ failed to provide a germane reason for rejecting the lay witness testimony. Plaintiff, therefore, is also entitled to summary judgment on this claim.

////

## III. Step-Five Error

At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006).

While an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, ("RFC"), must account for all of the limitations and restrictions of the particular claimant. Bray, 554 F.3d at 1228. "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, the ALJ's hypothetical question to the VE did not include all the limitations indicated by Dr. Schenck's opinions, plaintiff's testimony concerning mental impairments, and the lay witness testimony concerning plaintiff's mental impairments, as the ALJ rejected those items of evidence. (Tr. at 57-61.) Because the ALJ's rejection of this evidence was erroneous, the court cannot say that the ALJ's hypothetical question to the VE accounted for all of plaintiff's limitations and restrictions.

Moreover, plaintiff notes that Dr. Dixit opined that plaintiff was moderately impaired in the ability to understand, remember, or follow complex or detailed instructions. (Pl.'s MSJ (ECF No. 12) at 11.) The ALJ afforded Dr. Dixit's opinion "great weight," and found that plaintiff's RFC included a limitation to "simple, routine tasks." (Tr. at 25, 28.) When questioning the VE,

14

the ALJ's hypothetical included a limitation to "simple, routine tasks[.]" (Id. at 59.) The VE testified that a person with such a limitation could perform the job of mail room clerk, DICOT 209.687-026. (Id. at 60.) And, according to the VE, the VE's testimony was "[p]retty much" consistent with the information found in the Dictionary of Occupational Titles. (Id. at 61.) The ALJ relied on the VE's testimony in finding that jobs existed in significant numbers that plaintiff could have performed. (Id. at 30.)

The job of mail room clerk, however, requires Level 3 reasoning to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT 209.687-026. "[T]here is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." Zavalin, 778 F.3d at 847; see also Celedon v. Colvin, No. 1:13-cv-0449 SMS, 2014 WL 4494507, at *9 (E.D. Cal. Sept. 11, 2014) ("The weight of authority in this circuit, including in this district, has concluded that a limitation to simple, repetitive tasks is inconsistent with the DOT's description of jobs requiring GED reasoning Level 3."); Torrez v. Astrue, No. 1:09-0626-JLT, 2010 WL 2555847, at *9 (E.D. Cal. June 21, 2010) ("In light of the weight of authority in this circuit, the Court concludes that the DOT precludes a person restricted to simple, repetitive tasks, from performing work, such as that of mail clerk, that requires level three reasoning.").

Accordingly, the court finds that the ALJ erred at step five of the sequential evaluation and plaintiff is also entitled to summary judgment on this claim.[7]

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be

---

[7] Plaintiff also argues that two other jobs identified by the ALJ require Level 2 reasoning, which requires the ability to handle detailed instructions. (Pl.'s MSJ (ECF No. 12) at 16.) However, "[t]he the weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work." Coleman v. Astrue, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011).

15

remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, further administrative proceedings would serve no useful purpose as the record contains ample evidence, testimony, and medical opinion evidence. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Schenk's opinions, plaintiff's statements regarding mental impairment, and the corresponding lay witness testimony. If the improperly discredited evidence were credited as true, the ALJ would be required to find plaintiff disabled on remand, as evidenced by the VE's testimony. (Tr. at 60-63.) "Such a finding by the vocational expert is a sufficient basis upon which to remand for determination of benefits." Wechel v. Berryhill, 713 Fed. Appx. 559, 562 (9th Cir. 2017). Furthermore, the record as whole does not create serious doubt as to whether plaintiff is disabled. See Moe v. Berryhill, 731 Fed. Appx. 588, 592 (9th Cir. 2018) ("Remand for immediate award of benefits is appropriate in this case because all three factors of the credit-as-true rule are satisfied, leaving no 'serious doubt' as to Moe's disability.").

////

////

////

16

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 15) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the payment of benefits; and

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: August 29, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\ealy1084.ord